[Cite as *In re E.W.*, 2011-Ohio-2123.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | Case Nos.  10CA18 |
| E.W. | : | 10CA19 |
| J.W. | : | 10CA20 |
| J.W. | : | **Released: April 26, 2011** |
| | : | |
| | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |

_____

APPEARANCES:

Joseph H. Brockwell, Marietta, Ohio, for Appellant.

James E. Schneider, Washington County Prosecutor, and Susan L. Vessels, Washington County Assistant Prosecutor, Marietta, Ohio, for Appellee.

_____

McFarland, J.:

{¶1} Appellant, A.Y. (the biological mother of E.W., J.W., and J.W.), appeals the trial court's decision granting S.W., the children's natural father, legal custody of their three children.  Appellant argues that the trial court erred by holding the annual review hearing when the guardian ad litem failed to file her report at least seven days before the hearing, as Sup.R. 48(F) requires.  Because appellant failed to object to the untimely filing of the guardian ad litem's report before the hearing, she has waived all but plain error.  Plain error does not exist.  A violation of Sup.R. 48 does not mandate a reversal.  Furthermore, appellant cannot show how the guardian

ad litem's failure to file the report at least seven days before the hearing

caused her any prejudice. Thus, we reject appellant's assertion that the trial

court erred by holding the hearing when the guardian ad litem failed to

comply with Sup.R. 48(F). Appellant additionally contends that the trial

court abused its discretion by awarding S.W. legal custody of the three

children and by denying her motion for legal custody. Because the record

contains some evidence that the children's best interests would be served by

placing them in S.W.'s legal custody, the trial court did not abuse its

discretion. Consequently, we overrule appellant's two assignments of error

and affirm the trial court's judgment.

## I. FACTS

{¶2} Appellant and S.W. are the biological parents of three children,

E.W. (born February 18, 2000), J.W., and J.W (male and female twins born

on September 21, 2001).[1] On April 9, 2009, the trial court granted S.W.

emergency temporary custody of the children upon allegations that appellant

had physically abused the children. The next day, Washington County

Children Services (WCCS) filed a complaint that alleged the children to be

neglected and dependent and that requested the court to grant temporary

custody to S.W.. The statement attached to the complaint averred that: (1)

---

[1] Appellant has three or four other children fathered by different men--at times the record indicates appellant has a total of seven children, but at others, the record refers to six children. The present appeal involves only appellant's and S.W.'s children, E.W., J.W., and J.W.

appellant had beaten at least two of the children with a belt and/or an extension cord for failing to clean their rooms; (2) appellant had verbally abused her children; (3) on multiple occasions, appellant threatened to kill her children and stated that she understood how a mother could kill her own children; and (4) all three children stated that appellant hit them every day. At a shelter care hearing, the court continued the children in S.W.'s temporary custody, where they continued to remain throughout the proceedings.

{¶3} In June of 2009, appellant and S.W. filed separate motions that requested the court to award them (individually) legal custody of the children. The court, upon the parties' admissions, subsequently adjudicated the children dependent and dismissed the neglect allegations.

{¶4} On July 7, 2009, the guardian ad litem filed her report. She noted that the children have reported appellant's "fits of violent rage" directed towards them and that they have suffered physical abuse. The guardian stated that the children have advised her that food is often scarce in the home and, as a result, the children often are hungry. The guardian ad litem recommended that the children remain in S.W.'s temporary custody.

{¶5} On July 10, 2009, the court entered a dispositional order, pursuant to the parties' agreement, that placed the children in S.W.'s temporary custody, subject to WCCS's protective supervision.

{¶6} The matter then was set for an annual review hearing to be held on April 6, 2010, but appellant's counsel requested the court to continue it until May 5, 2010.[2]  Before the hearing, WCCS filed a motion in support of S.W.'s motion for custody.[3]

{¶7} On May 4, 2010, the day before the hearing, the guardian ad litem filed a final report.  She recommended that the court place the children with S.W. and allow appellant to have visitation with the children for three-to-four day stretches.

{¶8} On June 17, 2010, the court granted custody to S.W..  The court observed that appellant has been involved with children services since 1997. The court found that: (1) appellant physically and verbally abused her children; (2) appellant experienced difficulty handling the stress of raising the children as a single mother; (3) the three children "are doing very well" in S.W.'s care and have adjusted well to his home and their new school; (4)

[2] Both appellant and WCCS assert that the April hearing was continued due to the guardian ad litem's failure to file a report.  The reason for the continuance is not apparent from the written record.  However, because the parties do not dispute the reason for the April 20101 continuance, we assume the accuracy of the parties' statements that it was continued due to the guardian ad litem's failure to file a report before the scheduled hearing.

[3] We observe that the docket does not show that S.W. filed a motion for custody after the court's July 10, 2009 dispositional order.  As we explain, infra, we do not find this failure operates as a procedural bar to the trial court's actions in this matter.

the guardian ad litem reported that the children feel safe at S.W.'s home and that the children appear calmer and more relaxed; (5) the children told the guardian ad litem that if they were returned to appellant's house, they wanted the guardian to guarantee that they would not suffer any more verbal or physical abuse; (6) the guardian ad litem believes that appellant would have difficulty raising the three children along with her three older children presently residing in her home; and (7) since the children have been in S.W.'s temporary custody, the children's behavior has improved "and they no longer cower in fear when around other people." The court further noted that it had interviewed the children and that: (1) the oldest child, age 10, wishes to remain at S.W.'s house, where she feels safe; (2) the female twin, J.W., age 8, likes appellant's house better; and (3) the male twin, J.W., age 8, did not express a preference and stated that he equally likes both homes. The court thus determined that the children's best interests would be served by placing them in S.W.'s legal custody, subject to appellant's visitation in accordance with the court's standard orders. The court additionally terminated WCCS's protective supervision.

## II. ASSIGNMENTS OF ERROR

{¶9} Appellant timely appealed the trial court's judgment and raises two assignments of error:

First Assignment of Error:

THE TRIAL COURT ERRED BY HOLDING THE REVIEW
HEARING AND RULING ON THE MOTIONS FOR
CUSTODY WHEN THE WRITTEN REPORT OF THE
GUARDIAN AD LITEM WAS NOT MADE AVAILABLE
TO THE PARTIES AT LEAST SEVEN DAYS PRIOR TO
THE HEARING.

Second Assignment of Error:

THE TRIAL COURT ABUSED ITS DISCRETION BY
DENYING THE APPELLANT'S MOTION FOR CUSTODY
WHEN THE APPELLANT HAD DONE EVERYTHING
REQUIRED OF HER AND IT WAS IN THE CHILDREN'S
BEST INTEREST TO BE RETURNED TO HER CUSTODY.

### III.  GUARDIAN AD LITEM'S REPORT

**{¶10}** In her first assignment of error, appellant argues that the trial court erred by holding the hearing when the guardian failed to file the report at least seven days before the hearing, as Sup.R. (F)(1)(c) requires.  She asserts that the guardian ad litem's failure to file the report at least seven days before the hearing deprived her of the opportunity to examine the guardian's statements and to explore counter-arguments.

**{¶11}** In analyzing appellant's argument, we initially observe that she did not object to proceeding with the May 5, 2010 hearing due to the guardian's failure to comply with Sup.R. 48(F)(1)(c).  It is well-settled that failing to object at the trial court level to a complained of error results in a

waiver of that error on appeal.  See, e.g., *Goldfuss v. Davidson* (1997), 79

Ohio St.3d 116, 121, 679 N.E.2d 1099; *Gallagher v. Cleveland Browns*

*Football Co.* (1996), 74 Ohio St.3d 427, 436-37, 659 N.E.2d 1232.  Thus, an

appellate court may recognize an error that an appellant waived only if it

constitutes plain error.  See, e.g., *In re Etter* (1998), 134 Ohio App.3d 484,

492, 731 N.E.2d 694. Courts should exercise extreme caution when invoking

the plain error doctrine, especially in civil cases.  Courts should therefore

limit applying the doctrine to cases "involving exceptional circumstances

where error, to which no objection was made at the trial court, seriously

affects the basic fairness, integrity, or public reputation of the judicial

process * * *."  *Goldfuss*, 79 Ohio St.3d at 122-123; see, also, *In re Alyssa*

*C.* 153 Ohio App.3d 10, 2003-Ohio-2673 at ¶35, 790 N.E.2d 803; *In re*

*Curry,* Washington App. No. 03CA51, 2004-Ohio-750 at ¶42 (applying

plain error doctrine, overruled on other grounds).  The case at bar is not one

of those exceptional cases in which the alleged error seriously affects the

fairness of the proceedings.

{¶12} The "Rules of Superintendence are designed (1) to expedite the

disposition of both criminal and civil cases in the trial courts of this state,

while at the same time safeguarding the inalienable rights of litigants to the

just processing of their causes; and (2) to serve that public interest which

mandates the prompt disposition of all cases before the courts." *State v. Singer* (1977), 50 Ohio St.2d 103, 109-110, 362 N.E.2d 1216. Courts have interpreted the Rules of Superintendence as general guidelines for the conduct of the courts that do not create substantive rights. See Id. at 110 (stating that the Rules of Superintendence are not meant "to alter basic substantive rights"); see, also, *In re K.G.*, Wayne App. No. 10CA16, 2010-Ohio-4399, at ¶11; *Allen v. Allen,* Trumbull App. No.2009-T-0070, 2010-Ohio-475, at ¶31; *Sultaana v. Giant Eagle,* Cuyahoga App. No. 90294, 2008-Ohio-3658, at ¶ 45. "They are not the equivalent of rules of procedure and have no force equivalent to a statute. They are purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants." *State v. Gettys* (1976), 49 Ohio App.2d 241, 243, 360 N.E.2d 735.

{¶13} Sup.R. 48(F) outlines the guardian ad litem's duties when preparing a final report in a juvenile matter. As relevant in the case at bar, Sup.R. 48(F)(1)(c) states:

> (1) In juvenile abuse, neglect, and dependency cases and actions to terminate parental rights:
> * * *
> (c) Unless waived by all parties or unless the due date is extended by the court, the final report shall be filed with the court and made available to the parties for inspection no less than seven days before the dispositional hearing. * * *
> * * * *

{¶14} Sup.R. 48 became effective in March of 2009, and, thus, there is little case law interpreting its application.  See *In re J.L.R.*, Washington App. No. 08CA17, 2009-Ohio-5812, at ¶50 (noting scarcity of case law interpreting Sup.R. 48).  However, at least two appellate courts have examined the rule, and both courts concluded that the guardian ad litem's failure to comply with the rule did not constitute grounds for reversal.  See *In re K.G.*, supra; *Allen*, supra.  In *Allen*, for example, the guardian ad litem did not attend the final day of hearings, in contravention of Sup.R. 48(D)(4), and did not make his written report available to the parties until the day before the final hearing, in violation of Sup.R. 48(F)(2).  Id. at ¶30; see, also, *In re K.G.* at ¶13 (determining that alleged violations of Sup.R. 48 either did not exist or that the mother could not demonstrate any prejudice resulting from the alleged violations).

{¶15} In the case at bar, appellant does not have any substantive right to enforce under Sup.R. 48.  Instead, the rule is a general guideline that does not have the force of statutory law.  Moreover, beyond a general assertion that she could have conducted a further examination of the guardian ad litem's report, appellant has failed to demonstrate how the guardian ad litem's failure to file the report at least seven days before the hearing caused

her any prejudice. Thus, we do not find any plain error that the trial court should have noticed.

{¶16} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## IV. LEGAL CUSTODY

{¶17} In her second assignment of error, appellant argues that the trial court abused its discretion by denying her motion for custody.[4]

### A. STANDARD OF REVIEW

{¶18} We apply the same standard to a trial court's decision to award a party legal custody of a child that we apply to all child custody disputes— that is, we afford the utmost deference to a trial court's child custody decision. See, e.g., *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. Consequently, absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding child custody matters. See, e.g., *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. Thus, when "an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as

---

[4] Because neither party raises any issue as to whether appellant or S.W. actually filed a motion for custody after the court's initial dispositional order, we do not address it. We observe, however, that a juvenile court may review its dispositional orders at any time and must conduct an annual review. See R.C. 2151.417; *In re Young Children* (1996)*,* 76 Ohio St.3d 632, 637, 669 N.E.2d 1140 ("[R.C. Chapter 2151] ensure[s] that a child's welfare would always be subject to court review. That is, given that a child, by virtue of being before the court pursuant to R.C. Chapter 2151, was at risk of some harm, the General Assembly provided for the child's safety and welfare by ensuring that the juvenile court would retain jurisdiction over the child through the age of majority.").

being against the weight of the evidence by a reviewing court." *Bechtol* at

syllabus; see, also, *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674

N.E.2d 1159.

{¶19} In *Davis,* the court explained the abuse of discretion standard

that applies in custody proceedings:

> "'Where an award of custody is supported by a
> substantial amount of credible and competent evidence, such an
> award will not be reversed as being against the weight of the
> evidence by a reviewing court. (*Trickey v. Trickey* [1952], 158
> Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and
> followed.)' *[Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550
> N.E.2d 178, syllabus].
>> The reason for this standard of review is that the trial
> judge has the best opportunity to view the demeanor, attitude,
> and credibility of each witness, something that does not
> translate well on the written page. As we stated in *Seasons
> Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80-81, 10
> OBR 408, 410-412, 461 N.E.2d 1273, 1276-1277:
>> 'The underlying rationale of giving deference to the
> findings of the trial court rests with the knowledge that the trial
> judge is best able to view the witnesses and observe their
> demeanor, gestures and voice inflections, and use these
> observations in weighing the credibility of the proffered
> testimony. * * *
>>> * * *
>> * * * A reviewing court should not reverse a decision
> simply because it holds a different opinion concerning the
> credibility of the witnesses and evidence submitted before the
> trial court. A finding of an error in law is a legitimate ground
> for reversal, but a difference of opinion on credibility of
> witnesses and evidence is not. The determination of credibility
> of testimony and evidence must not be encroached upon by a
> reviewing tribunal, especially to the extent where the appellate
> court relies on unchallenged, excluded evidence in order to
> justify its reversal.' This is even more crucial in a child custody

case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well."

Id. at 418-419.  Thus, reviewing courts should afford great deference to trial court child custody decisions.  *Pater v. Pater* (1992), 63 Ohio St.3d 393, 396, 588 N.E.2d 794.  Additionally, because child custody issues involve some of the most difficult and agonizing decisions that trial courts are required to decide, courts must have wide latitude to consider all of the evidence and appellate courts should not disturb a trial court's judgment absent an abuse of discretion.  See *Davis,* 77 Ohio St.3d 418; *Bragg v. Hatfield,* 152 Ohio App.3d 174, 2003-Ohio-1441,, 787 N.E.2d 44, at ¶24; *Hinton v. Hinton,* Washington App. No. 02CA54, 2003-Ohio-2785, at ¶9; *Ferris v. Ferris,* Meigs App. No. 02CA4, 2003-Ohio-1284, at ¶ 20.

## B.  LEGAL CUSTODY STANDARD

{¶20} A trial court may terminate or modify a prior dispositional order and return legal custody to one of the child's parents if the child's best interests would be served by awarding that parent legal custody.  See R.C. 2151.42(A).  See, generally, *In re Pryor* (1993), 86 Ohio App.3d 327, 332, 620 N.E.2d 973 (stating that "the primary, if not only, consideration in the disposition of all children's cases is the best interests and welfare of the child").  In determining which of two parents would better meet a child's best interests, a trial court must follow R.C. 3109.04.  See R.C.

2151.23(F)(1); *In re Poling* (1992)*, 64 Ohio St.3d 211, 594 N.E.2d 589, at paragraph two of the syllabus ("[w]hen a juvenile court makes a custody determination under R.C. * * * 2151.353, it must do so in accordance with R.C. 3109.04"); *Pryor*, 86 Ohio App.3d at 333, fn.4 (stating that a trial court applies the same best interest standard in child custody disputes originating from a divorce and originating from a neglect, dependency, abuse complaint).

{¶**21**} R.C. 3109.04(F)(1) requires a trial court that is ascertaining a child's best interests to consider all relevant factors, including, but not limited to:

> (a) The wishes of the child's parents regarding the child's care;
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
> (d) The child's adjustment to the child's home, school, and community;
> (e) The mental and physical health of all persons involved in the situation;
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
> (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of

that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶22}** In the case at bar, the trial court's decision denying appellant's request for legal custody is not unreasonable, arbitrary, or unconscionable. The trial court could have rationally concluded that the children's best interests would be better served by awarding S.W. legal custody. Although the trial court did not engage in a specific analysis of the foregoing best

interests, factors, in the absence of a proper Civ.R. 52 request for findings of fact and conclusions of law, it had no obligation to do so.

{¶23} Civ.R. 52 states: "When questions of fact are tried by a court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise * * * in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law."  The failure to request findings of fact and conclusions of law ordinarily results in a waiver of the right to challenge the trial court's lack of an explicit finding concerning an issue.  See *Pawlus v. Bartrug* (1996), 109 Ohio App.3d 796, 801, 673 N.E.2d 188; *Wangugi v. Wangugi* (Apr. 12, 2000), Ross App. No. 2531; *Ruby v. Ruby* (Aug. 11, 1999), Coshocton App. No. 99CA4.  When a party fails to request findings of fact and conclusions of law, we must generally presume the regularity of the trial court proceedings. See, e.g., *Bunten v. Bunten* (1998), 126 Ohio App.3d 443, 447, 710 N.E.2d 757; see, also, *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 356, 421 N.E.2d 1293; *Security Nat. Bank and Trust Co. v. Springfield City Sch. Dist. Bd. of Educ.* (Sept. 17, 1999), Clark App. No. 98-CA-104; *Donese v. Donese* (April 10, 1998), Green App. No. 97-CA-70.  In the absence of findings of fact and conclusions of law, we generally must presume that the trial court applied the law correctly and must affirm if some evidence in the

record supports its judgment.  See, e.g., *Bugg v. Fancher,* Highland App.

No. 06CA12, 2007-Ohio-2019, at ¶10, citing *Allstate Financial Corp. v.*

*Westfield Serv. Mgt. Co.* (1989), 62 Ohio App.3d 657, 577 N.E.2d 383; see,

also, *Yocum v. Means,* Darke App. No. 1576, 2002-Ohio-3803, at ¶7 ("The

lack of findings obviously circumscribes our review.").  As the court

explained in *Pettet v. Pettet* (1988), 55 Ohio App.3d 128, 130, 562 N.E.2d

929:

> "[W]hen separate facts are not requested by counsel and/or
> supplied by the court the challenger is not entitled to be
> elevated to a position superior to that he would have enjoyed
> had he made his request. Thus, if from an examination of the
> record as a whole in the trial court there is some evidence from
> which the court could have reached the ultimate conclusions of
> fact which are consistent with [its] judgment the appellate court
> is bound to affirm on the weight and sufficiency of the
> evidence. The message is clear: If a party wishes to challenge
> the * * * judgment as being against the manifest weight of the
> evidence he had best secure separate findings of fact and
> conclusions of law. Otherwise his already 'uphill' burden of
> demonstrating error becomes an almost insurmountable
> 'mountain.'"

See, also, *Bugg; McClead v. McClead* at ¶10, Washington App. No.

06CA67, 2007-Ohio-4624 at ¶25.

{¶24} In the case at bar, there is some evidence to support the trial

court's judgment.  As the trial court found, the children remain fearful of

appellant's verbal and physical abuse and had even informed the guardian ad

litem that they did not wish to be returned to appellant unless the guardian

ad litem could guarantee that they would no longer suffer verbal and physical abuse.  Moreover, the evidence presented at the hearing shows that the children have adjusted well to S.W.'s home and their new school.  The trial court could have rationally determined that uprooting them once again, after being in S.W.'s custody for over one year, and returning them to appellant's custody would do more harm than good.  The trial court could have determined that the children's stability outweighed appellant's alleged good deeds and progress.  Moreover, the record contains evidence that appellant, who already has three children in her home, could become overwhelmed were the three children involved in this case returned to her custody.  Appellant's history shows that when she becomes overwhelmed with caring for six children, she verbally and physically abuses the children.  In sum, the totality of the factors fully supports the trial court's decision to award S.W. legal custody and to reject appellant's request for custody.  Thus, we are unable to conclude that the trial court abused its discretion.

{¶25} Accordingly, we overrule appellant's second assignment of error and affirm the court's judgment.

**JUDGMENT AFFIRMED.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, P.J. and Kline, J.: Concur in Judgment and Opinion.


For the Court,


BY:  _____
Matthew W. McFarland, Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**